**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200379-U

Order filed December 1, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| GALE W. LARSON, JEREMIAH LARSON, JOHANNA LARSON, and JILLIAN LARSON, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Warren County, Illinois. |
| | ) | |
| Plaintiffs-Appellees, | ) | Appeal No. 3-20-0379 |
| | ) | Circuit No. 16-LM-10 |
| v. | ) | |
| | ) | |
| JOSHUA J. LARSON, | ) | The Honorable |
| | ) | David L. Vancil Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   In an appeal in a conversion case, the appellate court held that: (1) it had appellate jurisdiction to rule upon the merits of the appeal; (2) the trial court did not err in finding that the defendant had converted the plaintiffs' personal property; and (3) the trial court's alleged error in denying defendant's request to admit certain evidence at the bench trial would not require a reversal in this case. The appellate court, therefore, affirmed the trial court's judgment.

¶ 2      Plaintiffs (Gale, Jeremiah, Johanna, and Jillian Larson) brought suit against defendant

(Joshua Larson) for partition and conversion relating to certain personal property that was owned

jointly by plaintiffs and defendant but located solely on defendant's land. The partition count was subsequently dismissed. A bench trial was later held on the conversion count, and the trial court found in favor of plaintiffs. Defendant appeals, arguing that the trial court erred in: (1) finding that defendant had converted plaintiffs' personal property; and (2) denying defendant's request to admit a certain federal tax return into evidence at the bench trial. We affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        Edward Larson and his wife, Ada, owned a 160-acre farm in Berwick, Warren County, Illinois, and lived in a farmhouse on the property where they raised their two sons, Dale and Gale (one of the plaintiffs here). In 1975, Edward passed away and left the property to Ada. Ada died four years later and left the property to Dale and Gale. After Ada passed away, no one lived in the farmhouse on the property; nor did anyone collect or distribute the items of personal property in the farmhouse that belonged to Ada's estate. Although Dale and Gale had initially started doing so, Dale padlocked or blocked the outside doors and prevented entry into the farmhouse.

¶ 5        Dale and Gale personally farmed the land until about 1996 when they began cash renting the farm property. After that time, the farm equipment that Dale and Gale had used was left sitting on the land. Over the years, while no one was living on the property, Dale went to the farmhouse often and brought to the farmhouse hundreds of boxes of items that he had collected. The farmhouse and other structures on the farmland were not maintained and deteriorated over the years. Some of the structures collapsed. The farmhouse had been invaded by animals and was filled with the boxes of stuff that Dale had accumulated.

¶ 6        In 2008, Gale filed a partition action in Warren County against Dale. The following year, however, before the partition action could be resolved, Dale passed away. Upon his passing,

2

Dale left his one-half interest in the farm property to his four children: Jeremiah E. Larson, Jillian Larson, Johanna Larson, and defendant, Joshua J. Larson. Each of the children received a one-eighth interest in the farm. Due to Dale's death, the four children became the named defendants in Gale's partition action. Gale eventually purchased the interest of three of the four children, except for Joshua, the defendant here. At the conclusion of the 2008 partition case, defendant received an undivided interest in 26 acres of the farmland (a parcel upon which the farmhouse was located) plus a cash payment, and Gale received an undivided interest in the remaining farmland. The trial court's ruling in the 2008 partition case was affirmed on appeal by this court in 2013. See *Larson v. Larson*, 2013 IL App (3d) 120621-U, ¶ 2.

¶ 7        In January 2016, Gale conveyed to defendant the portion of the farmland that had been awarded to defendant in the 2008 partition case. The next month (February 2016), Gale filed the instant action against defendant in the trial court. Following a motion to dismiss, Gale filed an amended complaint and added Dale's three other children—Jeremiah, Johanna, and Jillian—as co-plaintiffs.

¶ 8        In March 2017, plaintiffs filed their second amended complaint, the operative complaint in this case. In the second amended complaint, plaintiffs sought to remove and sell certain items of personal property that were located on defendant's 26-acre land. Plaintiffs claimed that the items had been inherited by Gale and Dale upon Ada's death, were personal items that Gale had left in the farmhouse from when he was a child, or were items of farm equipment that Gale and Dale had used to farm the property. Plaintiffs sought in count one of the second amended complaint to partition the personal property and claimed in count two that defendant had converted the personal property. The trial court dismissed plaintiffs' partition count pursuant to defendant's motion to dismiss but allowed the conversion count to proceed to trial.

3

¶ 9    In September and October 2019, a bench trial was held on plaintiffs' conversion claim. Testimony was presented from several witnesses, including plaintiffs, Gale and Jeremiah Larson; Roger Larson, a cousin of plaintiffs and defendant; Dennis Chandler, a neighbor who had cash-rented the farmland and had helped Gale move some of the items of personal property off of defendant's land; and from defendant. In addition to the testimony, the parties also presented various exhibits, including the will of Ada Larson, an order declaring heirship from Ada's estate, the cash rental agreement for the farmland, a letter that had been sent to plaintiffs by defendant's attorney, and a list of the personal property that was the subject of the conversion claim (plaintiffs' Exhibit No. 8).

¶ 10    The evidence presented at the trial established much of the background information that has been set forth above. In addition to that information, the evidence presented indicated that in November or December 2015, Gale and the cash-renter of the property began moving some of the farm equipment at issue from defendant's farmland (defendant's side of the partition) to an open area of farmland owned by Gale (Gale's side of the partition). Gale thought that defendant had verbally agreed to catalog and sell the items. When defendant found out that some of the items had been removed from his land, he filed police reports claiming that the property had been stolen and had his attorney send plaintiffs a letter instructing them not to enter upon or remove items from defendant's land. Defendant thereafter refused to allow plaintiffs to remove any more items from his land without his permission. In return, plaintiffs obtained an injunction preventing defendant from removing any of the items of personal property at issue from defendant's land as well.

¶ 11    At the time of the trial, defendant lived in a construction trailer on his property. Although defendant had made some efforts to clean up the property, the farmhouse was generally in a state

of disrepair and was filled with Dale's boxes. Farm equipment and other items had sat outside on what was now defendant's land for several decades. Some of the items had been sitting on the land since the 1940s. Defendant's land was littered with broken structures, debris, old cars, and other items.

¶ 12 At one point during the bench trial, defendant sought to admit Dale's 1982 federal tax return into evidence to show the business property that Dale and Gale owned when they were farming the land together. Defendant would later suggest to the court that plaintiffs' efforts to enforce any ownership rights they had in the property were barred by a statute of limitations that applied to business property and also because of laches. Plaintiffs objected to the admission of the tax return, arguing that the tax return was irrelevant, that defendant could not present a proper foundation for the evidence, and that the admission of the tax return was barred by the Dead Man's Act (735 ILCS 5/8-201 (West 2018)). The trial court agreed with plaintiffs on the basis of the Dead Man's Act, and denied defendant's request to admit Dale's tax return.

¶ 13 After the evidence portion of the bench trial had concluded, the trial court took the case under advisement and gave the parties time to file written closing arguments. On April 23, 2020, after the written closing arguments had been submitted, the trial court issued its decision in this case in the form of a letter ruling, which was mailed to the parties. In the ruling, the trial court found that plaintiffs had proven their claim of conversion by a preponderance of the evidence. The trial court refused to consider defendant's arguments regarding the application of the statute of limitations and laches because defendant had not pled those arguments as affirmative defenses. The trial court noted that the personal property that had been converted was listed on plaintiffs' trial Exhibit No. 8, excluding certain specific items that belonged to third parties and items that were owned solely by defendant. In the letter ruling, the trial court also provided that

5

unless the parties agreed otherwise, plaintiffs would be given a specific two-week period to go onto defendant's land to collect, photograph, and remove the personal property items at issue and to catalog any "subsequently discovered property" of Ada's estate. Plaintiffs' attorney was directed in the letter ruling to "prepare and submit" an order consistent with the trial court's findings.

¶ 14 On May 12, 2020, defendant filed a motion to reconsider. Two days later, on May 14, 2020, plaintiffs filed the written order they had prepared reflecting the trial court's letter ruling. On June 17, 2020, plaintiffs filed a motion to strike defendant's motion to reconsider, arguing that the motion to reconsider was premature because it had been filed before plaintiffs had filed the trial court's written order. On July 24, 2020, plaintiffs filed a motion to continue the hearing date (August 4, 2020) that had been set on the motion to reconsider because plaintiffs' attorney was going to be on vacation. Plaintiffs' motion to continue was later granted. On August 24, 2020, a hearing was held on plaintiffs' motion to strike. At the conclusion of the hearing, the trial court granted plaintiffs' motion to strike, finding that defendant's motion to reconsider was not timely filed because it had been filed two days before the trial court's final order was entered. On September 23, 2020, defendant filed a notice of appeal.

¶ 15                                     II. ANALYSIS

¶ 16                              A. Appellate Jurisdiction

¶ 17 Before we address the merits of the issues raised by defendant on appeal, we must first determine whether we have appellate jurisdiction to hear this case. Plaintiffs argue that appellate jurisdiction is lacking because defendant failed to file a timely notice of appeal within 30 days after the final judgment was entered. In making that argument, plaintiffs assert that the final judgment in this case was the written order submitted by plaintiffs and signed and entered by the

6

trial court on May 14, 2020, and not the letter ruling that had been issued by the trial court on April 23, 2020. Thus, plaintiffs contend that the motion to reconsider that defendant filed two days earlier (on May 12, 2020) was filed prematurely and did not extend the 30-day period for defendant to file a notice of appeal. Plaintiffs maintain, therefore, that the notice of appeal that defendant later filed (on September 23, 2020) after his motion to reconsider was stricken was not timely filed within the 30-day notice of appeal period. For that reason, plaintiffs ask that we dismiss this appeal for lack of appellate jurisdiction.

¶ 18        Defendant argues that his notice of appeal was timely filed and that appellate jurisdiction is proper in this case. In support of that argument, defendant asserts first that the trial court's letter ruling was a final and appealable judgment that resolved all of the pending issues between the parties and that defendant's posttrial motion (defendant's motion to reconsider), therefore, was not filed prematurely. Second, and in the alternative, defendant asserts that even if his posttrial motion was initially filed prematurely, it was constructively refiled when the trial court continued the motion after plaintiffs' written order had been entered; set the motion for hearing on plaintiffs' motion to strike; and ultimately, following a hearing, granted plaintiffs' motion to strike. Thus, defendant contends that under either scenario, his notice of appeal was timely filed and that appellate jurisdiction exists in this case.

¶ 19        The appellate court has a duty to determine if jurisdiction to hear an appeal exists and to dismiss an appeal if jurisdiction is lacking. See *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). It is well established that jurisdiction is conferred upon the appellate court only through the filing of a timely notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 189 (2000). If a timely notice of appeal has not been filed, the appellate court must dismiss the appeal for lack of appellate jurisdiction. See *Archer Daniels*

*Midland Co.*, 103 Ill. 2d at 539. Illinois Supreme Court Rule 303(a) (eff. July 1, 2017) sets forth the time requirements for filing a notice of appeal from a final judgment in a civil case. Rule 303(a) provides that a notice of appeal must be filed within 30 days after the final judgment was entered or, if a timely posttrial motion directed against the judgment was filed, within 30 days after the order was entered disposing of the last pending postjudgment motion directed against the judgment. Ill. S. Ct. R. 303(a)(1) (eff. Jul. 1, 2017); *Berg*, 193 Ill. 2d at 189. If a posttrial motion is filed prematurely—before the final judgment is entered—it does not extend the 30-day notice of appeal period. See *Archer Daniels Midland Co*, 103 Ill. 2d at 539. A prematurely-filed motion, however, may be constructively refiled and made timely under certain circumstances. See, *e.g.*, *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 739-40 (2008) (finding that a premature posttrial motion was constructively refiled and made timely when the trial court entered and continued the motion).

¶ 20 In the present case, even if we assume that defendant's motion to reconsider was initially filed prematurely, we would still find that defendant's motion was constructively refiled and made timely when the trial court continued the motion, set the matter for hearing on plaintiffs' motion to strike, and granted plaintiff's motion to strike following a hearing. See *id.* We, therefore, find that defendant's notice of appeal was timely filed within 30 days after the trial court granted plaintiffs' motion to strike defendant's motion to reconsider and that this court has appellate jurisdiction to consider the merits of the issues raised by defendant on appeal. See *id.* Thus, we need not consider defendant's other assertion on jurisdiction—that the trial court's letter ruling was a final and appealable judgment and that defendant's motion to reconsider was not filed prematurely.

¶ 21                                      B. Finding of Conversion

¶ 22    Turning to the merits, as his first point of contention of appeal, defendant argues that the trial court erred in finding that he converted plaintiffs' personal property. Defendant asserts that the trial court's finding in that regard was against the manifest weight of the evidence because plaintiffs failed to prove three of the four necessary elements of a conversion claim. More specifically, defendant contends that: (1) rather than showing that plaintiffs had an absolute and unconditional right to the immediate possession of the personal property against defendant, an element that plaintiffs were required to prove to prevail on their claim of conversion, the unrebutted evidence in this case showed that defendant was a co-owner of the property with an equal right to possession; (2) instead of showing that plaintiffs made a demand for repossession of the personal property, another required element of conversion, the unrebutted evidence showed that plaintiffs only demanded that the property be inventoried and sold; and (3) rather than showing that defendant wrongfully and without authority assumed control, dominion, and ownership over plaintiffs' personal property, a third required element of conversion, the unrebutted evidence showed that the property had sat for decades on defendant's land in an abandoned condition. In addition to plaintiff's failure to prove the required elements, defendant also asserts that the trial court's conversion ruling was erroneous because it improperly applied, in part, to items of personal property that were indefinite and unknown—items that had not yet been discovered that belonged to Ada's estate. As a final argument, and in the alternative, defendant asserts that even if the finding of conversion was appropriately made, the trial court's order should still be corrected by this court to account for the items listed on plaintiff's Exhibit No. 8 that actually belong to other people. Therefore, for all of the reasons stated, defendant asks that we reverse the trial court's conversion judgment outright or, in the alternative, that we correct the trial court's judgment as indicated above.

9

¶ 23    Plaintiffs argue that the trial court's finding of conversion in this case was proper and should be upheld. Plaintiffs assert that they sufficiently proved all four elements of their conversion claim in that the evidence presented at the bench trial showed that: (1) plaintiffs were owners of the personal property; (2) as owners, plaintiffs had an absolute and unconditional right to the immediate possession of the personal property, a right that was not defeated by defendant's ownership interest in the personal property; (3) plaintiffs had made a sufficient demand for return of the personal property by physically attempting to retrieve the property from defendant's land until they were ordered not to do so in a letter from defendant's attorney; and (4) defendant exercised unauthorized dominion and control over the personal property by refusing to give possession of it to plaintiffs. Thus, plaintiffs contend that the trial court's finding of conversion was not against the manifest weight of the evidence. As for defendant's argument in the alternative, plaintiffs assert that the trial court's order does not need to be corrected by this court since plaintiff's Exhibit No. 8, which was attached to and incorporated into the trial court's order, correctly indicated which property was owned by other individuals. Plaintiffs ask, therefore, that we affirm the trial court's judgment.

¶ 24    A trial court's finding made after a bench trial will not be reversed on appeal unless it is against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002); *Meyers v. Woods*, 374 Ill. App. 3d 440, 449 (2007). A finding is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the finding itself is unreasonable, arbitrary, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006); *Meyers*, 374 Ill. App. 3d at 449. Under the manifest weight standard, deference is given to the trial court as finder of fact because the trial court is in a better position than the reviewing court to observe the conduct and

10

demeanor of the parties and witnesses. *Best*, 223 Ill. 2d at 350. A reviewing court, therefore, will not substitute its judgment for that of the trial court as to the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn from the evidence. *Id.* at 350-51.

¶ 25 Conversion is the wrongful deprivation of property from the person entitled to possession. See *In re Karavidas*, 2013 IL 115767, ¶¶ 59-60 (setting forth various definitions of conversion); Restatement (Second) of Torts § 222A (1965). To prevail on a claim of conversion, the plaintiff must prove the following four elements by a preponderance of the evidence: (1) that the plaintiff has a right to the property; (2) that the plaintiff has an absolute and unconditional right to the immediate possession of the property; (3) that the plaintiff made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. See *Karavidas*, 2013 IL 115767, ¶ 61. Conversion may be found even where property is owned jointly, if one joint owner deprives the other joint owner of the use or possession of the property. See *Swartwout v. Evans*, 37 Ill. 442, 445 (1865).

¶ 26 In the present case, after reviewing the evidence presented at the bench trial, we find that the trial court's conversion ruling was amply supported by the evidence. The evidence presented at the bench trial showed that although plaintiffs and defendant were co-owners of the personal property, the personal property was located solely on defendant's land and defendant had excluded plaintiffs from possessing or using the personal property. Defendant had even called the police and reported the personal property as stolen after some of the property had been removed from his land by plaintiffs and had his attorney send plaintiffs a letter instructing them not to enter upon or remove items from defendant's land. Thus, there was sufficient evidence presented from which the trial court could have found that all four elements of a conversion

11

claim had been proven by plaintiffs. Contrary to defendant's assertion on appeal, the fact that defendant was a co-owner of the personal property with plaintiffs did not prevent plaintiffs from prevailing on their conversion claim. See *Swartwout*, 37 Ill. at 445 (the Illinois Supreme Court recognized that a finding of conversion could be made where one co-owner of a mowing and reaping machine had exercised exclusive ownership over the machine, repudiating the rights of the other co-owner). Nor has defendant presented any authority to suggest that plaintiffs' attempt to retrieve the personal property was an insufficient demand for the property's return or to indicate that a co-owners conversion claim must fail if the co-owner, rather than seeking repossession of the personal property, intends to sell the personal property and divide the proceeds because the parties cannot agree on the use or possession of the property. We conclude, therefore, that the trial court's finding of conversion was not against the manifest weight of the evidence presented at the bench trial in this case and must be upheld. See *Best*, 223 Ill. 2d at 350; *Meyers*, 374 Ill. App. 3d at 449.

¶ 27    In reaching that conclusion, we reject defendant's assertion that the trial court's order was also erroneous because it applied to items that had not yet been discovered that belonged to Ada's estate. Although defendant is correct that the subject of a conversion claim must be definite and certain (*Karavidas*, 2013 IL 115767, ¶ 65), here the personal property at issue was sufficiently identified as the property belonging to Ada's estate. Indeed, defendant's refusal to allow plaintiffs access to the personal property in the farmhouse and on defendant's land prevented plaintiffs from providing a more specific description of the property as did the dilapidated and cluttered condition of the farmhouse where some of the personal property was located.

¶ 28     We also deny defendant's request to correct the trial court's judgment in this case. The property listed in plaintiff's Exhibit No. 8, which is referenced in the trial court's order, clearly lists who owns the property at issue and plaintiffs have agreed on appeal that they have no interest in any property that belongs to third parties or solely to defendant.

¶ 29                          C. Admissibility of Evidence at Trial

¶ 30     As his second and final contention on appeal, defendant argues that the trial court erred in denying his request to admit Dale's 1982 federal tax return into evidence at the bench trial. Defendant asserts that the tax return should have been admitted because it was relevant to show the farm equipment (business property) that Gale and Dale owned after their mother, Ada, had passed away, even if defendant could not raise a statute of limitations defense at trial; it was self-authenticating; and the admission of the tax return was not prohibited by the Dead Man's Act, contrary to plaintiffs' representation at trial. Defendant asks, therefore, that we reverse the trial court's judgment and that we remand the case for a new trial.

¶ 31     Plaintiffs argue that the trial court's evidentiary ruling was proper and should be upheld. Plaintiffs assert that Dale's tax return was not admissible at trial because a proper foundation could not be presented for the admission of the tax return and because the tax return was irrelevant since defendant had not pled a statute of limitations defense, although plaintiffs generally concede on appeal that the Dead Man's Act would not have prevented the admission of the tax return into evidence in this case. In the alternative, plaintiffs assert that even if the trial court erred in denying defendant's request to admit the tax return, any error that occurred was harmless because the tax return added nothing new to the other evidence that had been presented. Plaintiffs ask, therefore, that we affirm the trial court's judgment.

13

¶ 32    A trial court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). The threshold for finding an abuse of discretion is high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *Leona W.*, 228 Ill. 2d at 460. However, even if a trial court commits an abuse of discretion in its ruling on the admissibility of evidence, a new trial should not be ordered unless the trial court's erroneous ruling appears to have affected the outcome of the trial. See *Leona W.*, 228 Ill. 2d at 460; *Troyan v. Reyes*, 367 Ill. App. 3d 729, 732-33 (2006).

¶ 33    In the present case, we need not determine whether the trial court erred in denying defendant's request to admit Dale's federal tax return into evidence because even if the trial court erred in its ruling, there is no indication in the record before us that the trial court's alleged error in that regard affected the outcome of the trial. See *Leona W.*, 228 Ill. 2d at 460; *Troyan*, 367 Ill. App. 3d at 732-33. Indeed, although defendant claims that the tax return was critical in this case, he makes no statement that the trial court's refusal to admit the tax return affected the outcome of this case or how it did so. We, therefore, reject defendant's argument on this issue. See *Leona W.*, 228 Ill. 2d at 460; *Troyan*, 367 Ill. App. 3d at 732-33.

¶ 34                              III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Warren County.

¶ 36    Affirmed.

14