## MEHR v. CHILD et al.

No. 5371.   Decided October 27, 1936.   (61 P. [2d] 624.)

*Joseph Chez,* of Salt Lake City, for appellants.

*Samuel C. Powell, of Ogden,* and *H. L. Mulliner* and *Chris Mathison,* both of Salt Lake City, for respondent.

ELIAS HANSEN, Chief Justice.

Defendants Harrison B. Child and Ivy B. Child prosecute this appeal from a judgment rendered against them in favor of the plaintiff. The action was dismissed as to defendant Glenna Mary Child Shupe. The judgment appealed from

is for personal injuries sustained by plaintiff in an automobile accident. By their assignment of errors defendants seek a reversal of the judgment because, as they claim: (1) The judgment is contrary to the evidence; and (2) the court below misdirected the jury as to the law applicable to the evidence.

The complaint is founded upon the alleged negligence of the defendant Alberta Child, the daughter, an alleged servant and agent of the appellants, in driving an automobile on the wrong side of a public highway near Ogden, Utah, resulting in a collision in which plaintiff received the injuries complained of. The defendants answered, denying negligence on their part, denied that at the time complained of Alberta Child was their agent or servant; and alleged that the collision in which plaintiff was injured was caused by her own negligence. The trial resulted in a verdict for plaintiff upon which the judgment appealed from was rendered.

The evidence, without conflict, shows these facts: At the time of the collision in question Alberta Child, age 16 years, the daughter of appellants, was driving her father's automobile, a Dodge sedan, in an easterly direction along a hard-surfaced highway which extends from Salt Lake City to Ogden, Utah. Miss Child was accompanied by a girl friend. Both girls were riding in the front seat. The collision occurred at a point between 600 and 800 feet west of the viaduct which extends over Weber river and the railroad tracks just south of the city of Ogden. There were no turns in the road at or near where the collision occurred. It occurred at about 1 o'clock p.m. on a clear day in July. Just before the accident plaintiff and her son, age 10 years, were riding in the front seat with a Mr. Kaufman in an automobile owned and driven by Mr. Kaufman in a westerly direction along the highway. The two automobiles, one driven by Miss Child and the other driven by Mr. Kaufman, collided almost head on. Plaintiff was quite seriously injured in the collision.

Plaintiff and her witnesses testified that the collision occurred in this manner: That the Kaufman automobile was proceding westward at a speed of about 25 miles per hour on the right-hand or northerly side of the highway. About four car lengths or 40 feet in front of the Kaufman automobile was a Studebaker automobile proceeding in the same direction at about the same rate of speed. The Studebaker automobile was owned by one George M. Thurston, who with his family, was riding in his automobile. The son of Mr. Thurston was driving the Studebaker automobile. As the Child automobile and the Thurston automobile approached each other, Mr. Thurston noticed that the Child automobile was being driven easterly on the north side of the highway. He also noticed that there were two girls riding in the front seat of the Child automobile. They were apparently laughing and talking and unconscious of the fact that they were driving on the wrong side of the road; that as the two automobiles approached nearer each other Mr. Thurston sounded the horn of his automobile and waved his hand in an attempt to attract the attention of the girls in the approaching Child automobile, but, being unable to attract their attention and seeing that there was imminent danger of a collision, Mr. Thurston's son suddenly turned to his left from the north to the south side of the road just in time to avoid a collision; that Mr. Kaufman saw the Thurston automobile suddenly turn to the left, and then for the first time saw the Child automobile approaching on the north side of the road directly in front of the Kaufman automobile; that Mr. Kaufman upon seeing the oncoming Child automobile slowed down to a speed of not to exceed 15 miles per hour; that, when Mr. Kaufman saw that the Child automobile was not going to move over on to the south side of the road he, in order to avoid a head-on collision, turned his automobile to the left; that he was unable to get far enough to the left to avoid a collision. No claim was made that the Child automobile was being driven at an unlawful rate of speed. Plaintiff also offered evidence as to

the nature of her injuries and expenses she had been put to by way of medical attention and hospitalization. No claim is made, or could well be made, that the amount awarded plaintiff by the jury is excessive if plaintiff is entitled to recover. That phase of the case is therefore not before us for review.

The version given by Alberta Child and her girl friend, both of whom testified on behalf of defendant as to how the accident occurred, is as follows: That for some time before the Child automobile reached the place of the accident Miss Child was driving east behind a slow-moving Ford truck; that a short time before she reached the place of the accident she attempted to pass the Ford truck, and, in order to do so, she drove on to the north side of the road; that, when she was about abreast of the Ford truck, the driver thereof put out his hand indicating that he was going to turn north across the road; that thereupon Miss Child slowed down to let the Ford truck pass in front of her; that before she was able to get back on the south side of the road the Thurston automobile passed her on the south side and immediately thereafter, about three seconds, the Child automobile and the Kaufman automobile collided. Miss Child testified that she did not see either the Thurston or the Kaufman automobile at the time she drove on to the north side of the road in an attempt to pass the Ford truck, and also that she did not see either the Thurston or the Kaufman automobile until at the time of the collision. Defendant offered evidence tending to show that both the Thurston and the Kaufman automobiles were traveling at a speed in excess of 40 miles an hour immediately before the collision. Plaintiff's witnesses testified that at no time just prior to the accident was there a Ford truck in front of the Child automobile.

Touching the question of whether or not Alberta Child was acting as the agent or servant of appellants at the time in question, plaintiff and Mrs. Robinson each testified that during the spring of the year following the date of the accident they went to the home of appellants; that at that time

the defendants said that on the occasion in question their daughter Alberta had taken the automobile not only by and with their consent but that they sent her to Ogden to get another daughter who was working in a beauty parlor. The defendants denied having made any such statement to plaintiff and Mrs. Robinson, and further testified that Alberta had taken her father's automobile on that day without their knowledge or consent and against their directions to her not to take the same. Alberta Child testified that she took the automobile without her parents' consent and that she was going into Ogden for the purpose of getting a marcel. Evidence was also offered on behalf of the defendants that their daughter who was a marcellist and who had formerly worked at that occupation in Ogden was in Boise, Idaho, at the time of the accident.

As will be seen from the foregoing summary, there was ample evidence to support a finding that Alberta Child was negligent as charged in the complaint and that such negligence on her part was the sole proximate cause of the collision and resulting injury to plaintiff. The only questions of merit presented on this appeal are: (1) Does the evidence support a finding that Alberta Child was the agent or servant of appellants at the time of the collision? and (2) Were the instructions to the jury touching that phase of the case open to the objections urged by appellants?

It is earnestly urged by appellants that the first question must, as a matter of law, be answered in the negative. The law applicable to admissions is thus stated in 3 Jones Commentaries on Evidence (2d Ed.) p. 1973, § 1072:

"When an admission is clearly proved and shown to have been made with deliberation, it is not necessarily weak evidence, nor does it require corroboration; on the contrary, when admissions are so proved, they may have great inherent force as evidence. To the extent of the subject-matter of the admission, it makes out a prima facie case and dispenses with other proof of the fact admitted until rebutted. And

a finding of fact, resting solely upon an extrajudicial admission, is not, for that reason, unsupported by substantial evidence."

Numerous cases cited in the footnote support the text. The law announced in the foregoing text is cited and followed by this court in the case of *Peterson* v. *Richards,* 73 Utah 59, 272 P. 229. The following cases cited in respondent's brief are to the same effect: *Kolensky* v. *DeFrancesco,* 102 Conn. 660, 129 A. 777; *Brown* v. *Atlantic Coast Line R. R. Co.,* 83 S. C. 53, 64 S. E. 1012; *Phoenix Ins. Co.* v. *Gray,* 113 Ga. 424, 38 S. E. 992; *Goss* v. *Steiger, etc., Works,* 148 Cal. 155, 82 P. 681. It is, however, urged on behalf of appellants that the evidence conclusively shows that their daughter who had been working as a marcellist in Ogden was in Boise, Idaho, at the time in question, and therefore it is inconceivable that appellants would send Alberta to Ogden to bring her sister home. The fact that the sister was in Boise, Idaho, at the time Alberta went to Ogden on the occasion in question would seem to clearly indicate that Alberta did not go to Ogden for the purpose of bringing the sister home, but such fact, even though established beyond controversy, while tending to weaken, does not destroy the testimony of plaintiff and Mrs. Robinson to the effect that defendants admitted that Alberta was sent to Ogden on an errand for them. The controlling fact is, was Alberta, or was she not, at the time of the collision, on an errand for her parents. If the trip to Ogden was made for the parents and at their request, liability would attach to them without regard to whether it was for the purpose of bringing the sister home or for some other purpose of the parents. In this connection it should be noted that the accident occurred while driving along the highway usually traveled in going from the Child home to Ogden. The verdict and judgment are not vulnerable to the attack that they were without support in the evidence.

The court below gave to the jury, among others, the following instructions:

(1) " The court instructs you as a matter of law that before the plaintiff can recover a verdict in this action she must establish to your satisfaction by a preponderance of the evidence that Alberta Child was authorized and directed by her father, H. B. Child, the owner of the Dodge car, on an errand or service for him, and plaintiff's injuries resulted from her negligent driving of the car while in the performance of such errand or service for her father.

"Liability cannot be cast upon the defendant H. B. Child merely because he owned the car."

(2) "The court instructs you as a matter of law that if you find from the evidence that Alberta Child, the daughter of defendant H. B. Child, the owner of the Dodge car, took the car without her father't or mother's knowledge or consent, and made use of it merely for her own purpose, then I charge you that plaintiff would not be entitled to a verdict against the defendants or any one of them."

(3) "The court instructs you as a matter of law that before the plaintiff can recover it will be incumbent upon her to prove to your satisfaction by preponderance of the evidence that Alberta Child was operating the Dodge car as the agent or servant of the defendants, and that plaintiff's injuries resulted from her negligence while driving the car in the discharge of such service for the defendants."

(4) "If you find from the evidence that Alberta Child was not operating the Dodge car pursuant to the authorization of defendants, or either of them, or for the benefit of or rendering service for the defendants at the time of the accident in question, then your verdict must be in favor of the defendants, no cause of action."

(5) "The court instructs you as a matter of law that before the plaintiff can recover it is necessary for her to prove by a preponderance of the evidence that Alberta Child was performing service for her father, the defendant H. B. Child, and acting in the course of such service at the time of the accident in question. The mere use of her father's automobile is not sufficient to render a verdict for the plaintiff."

(6) "You are further instructed that if you find from the evidence that Alberta Child was negligent as in the complaint alleged and in these instructions defined, and also that her said negligence was the proximate cause of the collision with the Kaufman car and the injuries, if any, of plaintiff; and if you also find that the defendants, Harrison B. Child and Ivy B. Child, or either of them, had authorized and commissioned her to drive the Child car at said time and place, or had sent her with the car for the doing of some errand or wish or desire or purpose of theirs, and that she was driving said car within the scope of and in furtherance of such authorization, commission and

purpose, that the said defendant or defendants so authorizing and commissioning or sending said Alberta Child would be liable to plaintiff for such injuries and damages, if any you find, as proximately resulted therefrom."

(7) "You are instructed in this case that it is admitted by the defendants that the defendant Harrison B. Child was the owner of the Dodge sedan here involved, and that in determining the question as to whether Alberta Child was authorized and commissioned or sent or was engaged in carrying out some errand or wish or desire or purpose of her parents, such matters need not be shown by express statements made at such time, but may be inferred from a general authority or from facts as well as statements or from a course of conduct, and the purpose need not be directly beneficial to the parents; it may be for some purpose or object beneficial to the child driving the car; that if authority is shown for such operation as agent or servant of the parents as hereinbefore defined, then the parents may be liable, even though they had no knowledge of the specific conduct alleged, or even though such conduct may be contrary to their direction."

Appellants did not object to any of the first five instructions above quoted. Indeed, they were in no position to object thereto because such instructions were given at the request of and in the form requested by the defendants. The first five instructions are quoted in this opinion because appellants contend that, while they contained a correct statement of the law applicable to the case in hand, the last two of the above-quoted instructions do not state the law and are in direct conflict with the law as correctly announced in the other five instructions. The objections made in the court below to the instruction which we have numbered 6 in this opinion was to the whole thereof. It is earnestly urged on behalf of appellants that the instructions objected to recognize and are founded upon the "family purpose doctrine" which doctrine has been repudiated by this court in the cases of *McFarlane* v. *Winters,* 47 Utah 598, 155 P. 437, L. R. A. 1916 D, 618; *Wright* v. *Intermountain Motor Car Company,* 53 Utah 176, 177 P. 237; and *Wilcox* v. *Wunderlich,* 73 Utah 1, 272 P. 207. Nothing is said in the instruction which we have numbered 6 in this

opinion which indicates that it is founded upon the so-called family purpose doctrine, especially when that instruction is read, as it must be, in connection with the first five instructions above quoted. In any event, the whole instruction is not bad. Appellants having confined their objections to the whole instruction which is divisible into integral parts, they are not entitled to prevail on their assignment with respect to that instruction. When an instruction is divisible into integral parts and any one or more of the integral parts is not open to objection, then, and in such case, an objection to the whole must fail. Among the numerous cases in this jurisdiction which so hold are the following: *Farnsworth* v. *Union Pac. Coal Co.*, 32 Utah 112, 89 P. 74; *Grow* v. *Utah Light & Ry. Co.*, 37 Utah 41, 106 P. 514; *Rampton* v. *Cole*, 52 Utah 36, 172 P. 477; *Hansen* v. *Oregon Short R. Co.*, 55 Utah 577, 188 P. 852; *McLaughlin* v. *Chief Consol. M. Co.*, 62 Utah 532, 220 P. 726.

The objections made to the instruction which we have numbered 7 in this opinion was to "the whole thereof and particularly to the following parts thereof: 'Such matters need not be shown by express statements made at such time, but may be inferred from a general authority or from facts as well as from statements or from a course of conduct, and the purpose need not be directly beneficial to the parents; it may be for some purpose or object beneficial to the child driving the car,' and we except to that part of said instruction reading: 'or even though such conduct may be contrary to their direction.'"

The mere fact that the parents may have authorized Alberta to take the automobile on the occasion in question did not render them liable for her negligence. Nor was a wish or desire of the parents that Alberta use the automobile, if the use was for her own purpose, sufficient to constitute her the agent or servant of the parents in making the trip to Ogden. There was no evidence which showed, or tended to show, that the parents by their course of conduct constituted Alberta their agent or servant

on the occasion in question, and therefore the jury was not at liberty to so find by inference or otherwise. A jury may not base a finding on mere conjecture. *Karren* v. *Bair,* 63 Utah 344, 225 P. 1094. The expression "if authority is shown for such operation as agent or servant of the parents" is somewhat misleading. To fasten liability on the parents Alberta must, at the time in question, have been acting as their agent or servant. It was not enough that she had authority to so act. If, however, Alberta was at the time of the collision acting as the agent or servant of her parents, they would not be relieved of liability for injuries caused by her negligence while engaged in the scope of her employment merely because the parents may have directed her not to be negligent.

The part of instruction numbered 7 touching the benefits that Alberta and her parents might or might not derive from the trip was calculated to confuse rather than aid the jury in its deliberations. The evidence offered by the plaintiff was to the effect that Alberta was sent on an errand by her parents, while the evidence offered by the defendants was to the effect that she took the automobile without the consent of her parents and that she went on an errand of her own. That was the issue raised by the evidence on that phase of the case. If the jury should find from the evidence and the preponderance thereof the facts upon that issue to be as claimed by plaintiff, then and in such case the defendants were liable, otherwise not. Instruction numbered 7 not only failed to present that issue to the jury but was calculated to confuse the jury with respect thereto. It is the duty of the court to confine the deliberations of the jury to the issues raised by the evidence. The instructions should not contain mere abstract propositions of law, but should so connect the law announced in the instructions to the evidence or the admitted facts that the jury may make the proper application of the announced law to the evidence and the facts as found. *Hillyard* v. *Bair,* 47 Utah 561, 155 P. 449; *Everts* v. *Worrell,* 58 Utah 238, 197 P.

1043. The court below was in error in giving instruction numbered 7 in the form given, and such error requires a reversal of the judgment.

The judgment is reversed, and this cause is remanded to the district court of Weber county, with directions to grant a new trial. Appellants are awarded their costs on appeal.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.